## MacKENZIE v. UNITED STATES.
### No. 9299.

Circuit Court of Appeals, Ninth Circuit.
Feb. 5, 1940.

Clyde C. Sherwood, of San Francisco, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Warren F. Wattles, and Howard D. Pack, Sp. Assts. to Atty. Gen., and Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Action instituted by the United States of America to enforce an asserted lien for income taxes on a bank deposit of the Oakland Paving Company in the Central National Bank of Oakland. Appellant is the assignee of one Thornsberry, a creditor of the Paving Company, and claims a prior lien with respect to said bank deposit.

On April 24, 1930, said Thornsberry brought suit against the Paving Company to recover upon a promissory note for $4,-250.

On June 26, 1931, the Commissioner of Internal Revenue of the United States

assessed against the Paving Company income taxes and interest for the years 1921, 1922 and 1923 in the total amount of $11,773.27. This assessment was entered upon an assessment list which was received by the Collector of Internal Revenue in San Francisco, California on June 26, 1931. The Collector gave notice to the Paving Company, and demand for payment on June 29, 1931, but no part of said taxes and interest has been paid. The statutory period within which collection of these taxes can be made by the United States has been extended to December 31, 1941, by waivers duly executed by the Paving Company.

On September 4, 1931, a writ of attachment was issued in the Thornsberry action, and levied by the Sheriff upon the bank account of the Paving Company in the Bank. At that time the Paving Company had on deposit with the Bank the sum of $1,681.54.

On April 2, 1932, the Collector of Internal Revenue at San Francisco filed a notice of federal tax lien against the Paving Company in the sum of $11,773.27 with the Recorder of Alameda County, California, and with the Clerk of the United States District Court at San Francisco, California.

On May 28, 1932, Thornsberry recovered judgment against the Paving Company for $1,700 plus interest, and on the same day execution was issued and levied upon the Bank but was returned unsatisfied. Thornsberry subsequently assigned this judgment to one Hillerman, who in turn assigned it to appellant.

On June 25, 1937, the United States served notice of its tax lien on the Bank and made demand for payment. The Bank at all times refused to pay any monies to either the United States or MacKenzie or his predecessors in interest until the rights of all parties were finally determined. The Bank filed, in this proceeding, a bill of interpleader wherein it agreed to hold all deposits of the Paving Company until the rights of the respective parties were finally determined.

After hearing the District Court awarded the sum on deposit to the United States, and the present appeal followed.

The sole question for determination is, Does the prior tax lien of the United States prevail over an attachment where notice of the tax lien was filed after attachment was levied but before the attaching litigant obtained judgment?

The federal tax lien is entirely statutory, therefore its scope and effect are to be determined solely by the statute and the decisions interpreting it. The statute creating the lien is Section 3186 of the Revised Statutes, as amended, 26 U.S.C.A. §§ 1560, 1561, 1562, which read during the period involved herein:

"Sec. 3186 (a) If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time.

"(b) Such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; or

"(2) in the office of the clerk of the United States District Court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law provided for the filing of such notice * * *".

The language of Section 3186 above quoted is somewhat ambiguous as to the precise time when the tax lien attaches. The first sentence provides that the tax shall be a lien in favor of the United States if the taxpayer "neglects or refuses to pay the same after demand * * *". A reading of this sentence would indicate that demand and refusal to pay are conditions precedent to the attachment of the lien. The next sentence provides that "Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector * * *". Since demand is not made until after the assessment list is received, it appears that the two provisions may be inconsistent. However, for the purposes of the present case, we need not attempt to reconcile these provisions, for it appears

that the assessment list was received by the Collector on June 26, 1931, and demand for payment was made three days later, on June 29, 1931, both dates being before the writ of attachment was issued in favor of appellant's predecessors. For the purpose of this discussion we shall assume, without so deciding, that the correct interpretation of the statute is that the lien arises on the latest date specified, or after demand.

Appellant bases his claims upon two contentions, first, that he is entitled to prevail even though Thornsberry was not a judgment creditor until after the Government's tax lien was recorded, since, as he argues, the lien of the United States could not operate against him until the United States made an actual levy by giving notice to the Bank or at least until the notice of lien was recorded; and, second, that he is entitled to a status of "judgment creditor" and is entitled to priority under the terms of the statute.

■ Appellant cites United States v. Western Union Telegraph Co., 2 Cir., 1931, 50 F.2d 102, contending that it is authority that the tax lien in favor of the Government does not attach to a debt owing to the taxpayer. His argument is that the bank deposit was a debt of the bank to the depositor, and hence not subject to the lien. We do not agree with this construction of the statute. The language of the statute itself refutes this argument, for it states that the lien shall attach to "all property and rights to property, whether real or personal". Furthermore, Section 3187 of the Revised Statutes, 26 U.S.C.A., § 1580, providing for collection of the tax by distraint and sale, specifically provides that the Collector may sell the taxpayer's "goods, chattels, or effects, including stocks, securities, bank accounts, and evidences of debts". The statute is unambiguous and all-inclusive, and does not admit of any construction which would exclude a bank account.

■ Appellant next argues that he had a vested right in the bank account by virtue of his attachment, and that Congress could not have intended to impress a tax lien on said account to his prejudice.

An examination of the legislative history of Section 3186 makes it clear that Congress did so intend. Prior to the enactment of the amendment in 1913 the Act contained no provision for priority on the part of any third parties. Decisions under the Act prior to 1913 repeatedly held that no third parties, not even innocent purchasers for value, were protected under any circumstances from an unrecorded tax lien. United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705. In 1913, 37 Stat. 1016 Congress added the provision that the tax lien shall not be valid against "any mortgagee, purchaser, or judgment creditor" until recordation of the notice. Congress at this time undoubtedly recognized that under the statute as it existed prior to 1913 no third person was protected under any circumstances, from an unrecorded federal tax lien. By the 1913 amendment it intended to extend protection, not to all third parties, but to the three classes of third parties designated therein, namely, mortgagees, purchasers and judgment creditors. We conclude that in order to be protected, the claimant must show that he is within one of those three classes.

■ Appellant, however, contends that under the California law he is entitled to be classed as a "judgment creditor" and hence within the specific wording of the statute. His argument is that "the purpose of an attachment is to secure the satisfaction of any subsequent judgment that may be rendered in the action", and therefore one who has an attachment is entitled to a classification of "judgment creditor". We do not agree with the conclusion. No cases so holding are cited by appellant, and our research fails to disclose any. The judgment was not rendered in favor of appellant's predecessors until May 28, 1932, after the notice of the tax lien was recorded by the Collector.

The decision of the District Court is affirmed.