### In re CAPITAL FOUNDRY CORPORATION.

### No. 46229.

District Court, E. D. New York.
Jan. 31, 1946.

886

Jerome Voletsky, of Brooklyn, N. Y., for petitioner.

T. Vincent Quinn, U. S. Atty., of Brooklyn, N. Y. (Eli Resnikoff, Asst. U. S. Atty., of New York City, of counsel), for Collector of Internal Revenue, respondent.

GALSTON, District Judge.

The motion is for an order to vacate the order of this court authorizing and directing the trustees of the debtor to pay to the Kingsway Sheet Metal and Roofing Co., Inc., the sum of $260.

On November 2, 1945, the creditor appeared on a motion for the order based on a petition which set forth that the debtor had on or about February 15, 1945, employed the creditor to do certain repair work on its premises in Brooklyn; that the work was completed on February 19, 1945; and that on March 27, 1945, pursuant to the lien law of the State of New York, the petitioner duly filed, in the office of the Clerk of Kings County, a notice of mechanic's lien. The petition also recited that the petitioner duly filed a claim with the trustees, asserting its lienor's rights under the mechanic's lien law of the State of New York; that on September 28, 1945, the real property was sold, free and clear of encumbrances, but that a claim to the proceeds was made by the Collector of Internal Revenue. The petitioner asserts such claim is subordinate to that of the mechanic's lienor.

The motion was granted on default, no opposition having been made by the Internal Revenue department. On December 7, 1945, one of the Assistant United States Attorneys verified an affidavit in opposition, but that affidavit was not filed in the clerk's office of the United States District Court until December 20, 1945.

Despite the delay indicated, and because of the importance of the legal issue raised, the motion to vacate the order of priority was granted, to enable the question to be determined on the merits.

The Government's affidavits disclose that the tax assessments are in two groups: One, those that were received by the Collector of Internal Revenue prior to the date on which the mechanic's lien was filed, and two, those received by the Collector subse-

quent to the date of the filing of that lien. The first group consists of two items: (a) Income tax for the fiscal year ending September 30, 1943, in the amount of $89,417.72, which assessment was received in the office of the Collector of Internal Revenue, First District of New York, on February 18, 1944; and (b) an additional income tax for the income for the fiscal year ending September 30, 1942, in the amount of $2,168.82, which assessment was received in the same Collector's office on December 13, 1943. On February 21, 1945, according to the Government's affidavit, a notice of lien was filed by the Collector in the amount of $98,804.97.

On March 2, 1945 the debtor filed a petition for reorganization, pursuant to Chapter X, 11 U.S.C.A. § 501 et seq. Since that time the assets of the debtor have been sold. There still remains for consideration a plan to be submitted for the distribution of those assets. Meanwhile, whatever instruction under the Act is given in respect to priorities among creditors is found in Title 11, U.S.C.A. § 207 sub. k(5):

"Debts shall be entitled to priority as provided in section 104 of this title."

Sec. 104 designates the debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment. Paragraph a after enumerating three different classes not necessary to detail here, provides: "(4) taxes legally due and owing by the bankrupt to the United States * * *; and (5) debts owing to any person, including the United States, who by the laws of the United States is entitled to priority * * *"

Also provision is made in subdivision o of Sec. 207 that:

"In proceedings under this section * * * the duties of the debtor and the rights and liabilities of the creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved."

 Thus it is clearly indicated in the enumeration of priorities that taxes due the United States take priority over a claim of a mechanic's lienor under the mechanic's lien law of any state. Though in Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 303, 87 L.Ed. 312, the facts were somewhat

different, there is enough in the facts to make what was said about the applicable law pertinent in the matter before us. In that case a lien for estate taxes was asserted by the Government. The City of Detroit, the County of Wayne and the State of Michigan asserted liens for City, County and State taxes on the real estate in question, accruing subsequently to the federal estate tax lien. The municipalities contended that the city liens were given superiority over the federal lien by virtue of state statutes. But Mr. Chief Justice Stone wrote that the argument ignores the "effect of a lien for federal taxes under the supremacy clause of the Constitution".

█ Considering for the moment only the tax assessments which were received by the Collector prior to February 19, 1945, when the creditor performed certain labor and furnished materials, it appears that on February 21, 1945, after the work was performed, but before the creditor filed its mechanic's lien, the Collector of Internal Revenue duly filed a notice of the United States lien for income taxes in the amount of $98,-804.97. The lien of the Government is based on Title 26 U.S.C.A. Int.Rev.Code, § 3670 et seq. These sections are quoted in the margin.* Thus it appears that the Government acquired tax liens both on December 13, 1943 and on February 18, 1944, when the assessments for income taxes were received in the office of the Collector of Internal Revenue. They then became effective against all persons on those respective dates and after February 21, 1945, on which day the notice of the tax lien was filed by the Collector, valid against any persons including mortgagees, purchasers and judgment creditors. Of course, the Kingsway Sheet Metal and Roofing Company, Inc. did not fall within the category of "mort-

gagee, pledgee, purchaser or judgment creditor." The most that could be asserted by that creditor was that under the laws of the State of New York it acquired the right within four months of the performance of the work and the furnishing of the materials, to file a notice of mechanic's lien. That was done on March 27, 1945. Reference to the New York State lien law, Consol.Law N.Y.C. 33, would seem to be decisive of the question as to when the mechanic's lien became effective. Sec. 3 of that Act provides:

"A contractor, * * * or material man * * * shall have a lien for the principal and interest, of the value, or the agreed price, of such labor or materials * * * from the time of filing a notice of such lien as prescribed in this chapter."

Sec. 4 defines the extent of the lien and in part reads:

"Such lien shall extend to the owner's right * * * in the real property * * * existing at the time of filing the notice of lien,"

Thus the language of the state statute is clear, and led the court in Tisdale Lumber Co. v. Read Realty Co., 154 App.Div. 270, 138 N.Y.S. 829, 831, to say:

"There is no such thing as an 'inchoate' mechanic's lien. The sole right given by the statute is to create a lien, which has no existence, inchoate or otherwise, until the notice is filed, and until this is done no priority among the claims of creditors is recognized. The lien and a consequent priority originates with the notice, when duly filed. Mack v. Colleran, 136 N.Y. 617, 620, 32 N.E. 604."

Additional support is afforded the Government's position by the provisions of Sec. 191, 31 U.S.C.A.:

---

* "3670. Property subject to lien. If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. (53 Stat. 448.)

"3671. Period of lien. Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount

is satisfied or becomes unenforceable by reason of lapse of time. (53 Stat. 449.)

"3672. Validity against mortgagees, pledgees, purchasers, and judgment creditors. (a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) Under State or Territorial laws. In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office within the State or Territory."

888

"Priority established. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

For discussion of this section, see In re Knox-Powell-Stockton Co., 9 Cir., 100 F.2d 979, which held that the section afforded priority to the United States over all creditors, including those with inchoate liens. See also United States v. Reese, 7 Cir., 131 F.2d 466.

For the foregoing reasons the order of December 20, 1945 must be vacated and the motion of the Kingsway Sheet Metal and Roofing Co., Inc., for payment out of the proceeds of sale of the real property of the debtor denied.